UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

)
CESAR ORELLANA,                                       )
                                                                          )
              Plaintiff,                                      )
v.                                                                       )
                                                                          )
DEUTSCHE BANK NATIONAL TRUST CO., as     )     Civil Action No. 12-11982-NMG
Trustee for GSAA Home Equity Trust Series 2006-  )
11; HOMEWARD RESIDENTIAL, INC.;               )
MORTGAGE ELECTRONIC REGISTRATION        )
SYSTEMS, INC., and DOES 1through 100,              )
inclusive,                                                        )
                                                                          )
              Defendants.                                    )
_____)

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION TO DISMISS**
[Docket No. 10]

August 30, 2013

Boal, M.J.

Plaintiff Cesar Orellana ("Orellana") brings this action against Deutsche Bank National

Trust Co., as Trustee for GSAA Home Equity Trust Series 2006-11 ("Deutsche Bank"),

Homeward Residential, Inc. ("Homeward"), Mortgage Electronic Registration Systems, Inc.

("MERS"), and Does 1 though 100 (collectively "Defendants") challenging the foreclosure and

the sale of his property located in Hyde Park, Massachusetts.

Defendants have filed a motion to dismiss Orellana's complaint pursuant to Fed. R. Civ.

P. 12(b)(6).  Docket No. 10.  For the following reasons, the undersigned recommends[1] that the

District Court GRANT Defendants' motion to dismiss.

_____

[1] On January 3, 2013, the District Court referred Defendants' motion to this Court for a
report and recommendation.  Docket No. 25.

1

I.     <u>FACTUAL BACKGROUND</u>[2]

Orellana is the "borrower on a mortgage loan" secured by his property located in Hyde Park, MA ("the Property").  Compl. ¶ 1.[3]

Defendant Deutsche Bank is a California corporation with a principal place of business in Pasadena, California.  <u>Id.</u> at ¶ 2.  Deutsche Bank is the Trustee of the GSAA Home Equity Trust 2006-11 ("the Trust"), which was formed in 2006.  <u>Id.</u> at ¶ 19.  Defendant Homeward is a Delaware corporation with its corporate offices in Coppell, Texas.  <u>Id.</u> at ¶ 3.  Homeward is the successor-in-interest to American Home Mortgage Servicing, Inc. ("AHMSI") who acted as the servicer of the subject mortgage.  <u>Id.</u>  Defendant MERS is a Delaware corporation with a listed address in Reston, Virginia. <u>Id.</u> at ¶ 4.  Defendants Does 1-100 are individuals, entities, and/or corporations who were either investors, mortgage aggregators, mortgage originators, loan sellers, trustees of pooled assets, or trustees for holders of certificates of collateralized mortgage obligations.  <u>Id.</u> at ¶ 5.[4]

On or about February 3, 2006, Orellana executed an adjustable rate promissory note in favor of American Brokers Conduit ("ABC") in the amount of $370,300 ("the note").  <u>Id.</u> at ¶ 9 & Ex. 1.  The note provides that ABC "may transfer this Note," and ABC "or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note

---

[2] Unless otherwise noted, the facts are derived from Orellana's complaint and the exhibits attached thereto. Because this action is before the Court on a motion to dismiss, the Court takes as true all well-pleaded allegations and draws all reasonable inferences in Orellana's favor.  <u>See</u> <u>Morales-Tañon v. Puerto Rico Electric Power Authority</u>, 524 F.3d 15, 17 (1st Cir. 2008).

[3] "Compl. _" refers to Orellana's complaint and the exhibits attached thereto.  Docket No. 1, Exs. 1-5.

[4] In his complaint, Orellana noted that he would seek leave of court to amend his complaint to list the actual names and capacities of the Doe defendants.  <u>Id.</u> at ¶ 5.  To date, he has not done so.

Holder.'"  Compl., Ex. 1 ¶ 1.  Orellana also executed a mortgage, which lists ABC as the lender and MERS as both "nominee" for ABC and "mortgagee" ("the mortgage").  Compl. ¶ 9 & Ex. 2. The mortgage provides that "[t]he Note or a partial interest in the Note (together with [the mortgage]) can be sold one or more times without prior notice to Borrower."  Compl., Ex. 2 ¶ 20. The mortgage also includes a section entitled "Transfer of Rights in the Property" which states, "Borrower does hereby mortgage, grant, and convey to MERS (solely as nominee for [ABC] and [ABC's] successors and assigns) and to the successors and assigns of MERS, with power of sale, [the Property]."  Id. at p. 3.[5]

Soon after executing the note and mortgage, and before the first loan payment was due, Orellana was notified that the mortgage servicing rights had been transferred to AHMSI.  Compl. ¶ 10.  Orellana eventually defaulted on the loan.  See Def. Ex. B.[6]  By letter dated December 5, 2008, AHMSI sent Orellana a notice of default, informing him of his right to cure the default. Id.

On or about December 12, 2008, an Assignment of Mortgage ("2008 assignment") was recorded at the Suffolk County Registry of Deeds stating that MERS, as nominee for ABC, "hereby assigns said mortgage and the note and claims secured thereby" to AHMSI.  Compl. ¶ 11 & Ex 3.

On or about July 22, 2009, a second Assignment of Mortgage ("2009 assignment") was recorded, whereby AHMSI "as successor-in-interest to Option One Mortgage Corporation" assigned the mortgage to Deutsche Bank.  Compl. ¶ 12 & Ex. 4.  On April 29, 2011, Orellana

---

[5] When referencing the parties' exhibits, the Court cites to the page numbers of the original documents.

[6] "Def. Ex. _" refers to the exhibits attached to Defendants' motion to dismiss.  Docket No. 13.  As discussed, infra, the Court will consider some of the documents attached to the parties' briefs.

sent AHMSI a "dispute of debt and validation letter" ("DVL"), in which he asked questions about and requested documents pertaining to his mortgage loan. Compl. ¶ 14 & Ex. 6.

On or about May 6, 2011, a "Confirmatory Corporation Assignment of Deed of Trust/Mortgage" ("2011 assignment") was recorded, stating that AHMSI, in its own capacity, assigns the mortgage "together with the note" to Deutsche Bank. Compl. ¶ 13 & Ex. 5.

AHMSI sent a letter in response to Orellana's DVL on or about June 20, 2011, which contained a copy of the December 2008 notice of default. Compl. ¶ 15 & Ex. 7. The notice of default was redacted so that no dates, addresses, loan numbers or financial information are discernable. Compl. ¶ 15. Orellana states that he had not seen the notice of default prior to AHSMI's response letter. Id.

On May 12, 2011, Deutsche Bank filed a complaint in state housing court seeking authority to foreclose on the Property. Def. Ex. D. On or about June 7, 2012, Orellana received a letter dated June 4, 2012 from Korde & Associates, P.C., which contained a notice of sale indicating Deutsche Bank's intention to foreclose on the Property by power of sale. Compl. ¶ 16 & Ex. 8. The notice indicated a sale date of July 27, 2012. Compl., Ex. 8.

II.    PROCEDURAL BACKROUND

Orellana filed his complaint in state court on July 24, 2012. SR at 10.[7] On October 24, 2012, Defendants removed the action to this Court on the basis of diversity jurisdiction. Docket No. 1. On November 14, 2012, Defendants filed the present motion to dismiss. Docket No. 10. Orellana opposed the motion on November 26, 2012. Docket No. 14. With leave of court, the parties filed reply and sur-reply briefs on December 28, 2012 and January 11, 2013, respectively. Docket Nos. 21, 26-28. This Court heard oral argument on July 24, 2013. Docket No. 37.

---

[7] "SR _" refers to the State Court record. Docket No. 8. When referring to the record, the Court cites to the docket page numbers.

4

III.   STANDARD OF REVIEW

   A.   Legal Standard

   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

   Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

   B.   Scope Of The Record

   The parties attach documents to the pleadings and briefs. In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents

5

attached as exhibits or incorporated by reference in the complaint and matters of which judicial

notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D.

Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Courts have made narrow exceptions for

documents the authenticity of which are not disputed by the parties, for official public records,

for documents central to plaintiffs' claim or for documents sufficiently referred to in the

complaint.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Consideration of other materials is

generally forbidden unless the motion is properly converted into one for summary judgment.  Id.

Defendants attach the following documents to their motion to dismiss: (1) Orellana's

complaint and the exhibits attached thereto; (2) the December 5, 2008 notice of default; (3)

AHMSI's letter dated June 22, 2011 in response to Orellana's DVL; (4) the docket sheet from

the Massachusetts Land Court proceedings; and (5) a copy of M.G.L. ch. 244 § 35A, as it existed

prior to the 2010 amendments.  See Def. Exs. A-D.[8]

Orellana appends the following to his memorandum in opposition: (1) the Trust's Master

Servicing Agreement ("MSA"); (2) an Assignment, Assumption and Recognition Agreement

among several non-parties pertaining to the Trust; (3) a case law outline from MERS' law

department; and (4) MERS' Rules of Membership.  See Pl. Opp. Exs. A-D.[9]

In deciding a motion to dismiss, a court may consider most of the types of documents

described above.  For example, the court may consider all exhibits attached to the complaint

itself and all legal authority submitted by the parties.  With the exception of Orellana's last three

exhibits, the remaining documents are central to Orellana's claims and are either public records

---

[8] "Def. Exs. _" refers to the exhibits attached to the Memorandum of Law in Support of Defendants' Motion to Dismiss.  Docket No. 13.

[9] "Pl. Opp. _" refers to Orellana's Opposition to Defendants Motion to Dismiss.  Docket No. 14.

or are referenced sufficiently in the complaint.  The Court will not consider the Assignment, Assumption and Recognition Agreement, MERS' case law outline, or MERS' Rules of Membership because Orellana does not state any claims based on these documents or even mention them in his complaint.

IV.   ANALYSIS

Orellana's complaint asserts claims for fraud (Count I), wrongful foreclosure (Count II), civil conspiracy (Count III), quiet title (Count IV), and punitive damages (Count V).  Defendants move to dismiss the complaint on grounds that: (1) Deutsche Bank lawfully foreclosed on the Property; (2) Orellana has failed to meet the pleading standard of Fed. R. Civ. P. 9(b); (3) Orellana cannot satisfy the elements of his claims for fraud and civil conspiracy, (4) Orellana does not hold legal title to the Property, and (5) Massachusetts does not recognize a separate cause of action for punitive damages.

A.   Wrongful Foreclosure

Orellana contends that Deutsche Bank unlawfully foreclosed on the Property.  Orellana advances several legal theories in support of this contention.

1.   *Foreclosure By Mortgagee Without Note*

Orellana alleges that Deutsche Bank was without authority to foreclose because the note was split or separated from the mortgage.  See Compl. ¶¶ 6(d), 18-33, 55, 71, 72, 74, 83(b), 96, 98, 100.

In Massachusetts, foreclosure under the "power of sale" is governed by M.G.L. ch. 244, § 14.  The Supreme Judicial Court has construed the term "mortgagee" in Section 14 to mean a mortgagee that also holds the underlying mortgage note.  Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 584 (2012).  In Eaton, the SJC held that a foreclosure sale must be conducted by the

note holder or by one who acts as an authorized agent of the note holder.  Id. at 584-85.

However, the SJC exercised its discretion to apply its decision only "to mortgage foreclosure

sales for which the mandatory notice of sale has been given after the date of the decision."  Id. at

588-89; see Woods v. Wells Fargo Bank, N.A., No. 11–30216–MAP, 2012 WL 2577580, at *2

(D. Mass. July 3, 2012) ("[A]s a pre-Eaton mortgagee, [the bank] would be entitled to foreclose

even without proof that it was also the note holder or its agent.").

The SJC decided Eaton on June 22, 2012.  Here, the notice of sale was issued on June 4,

2012 and received by Orellana on June 7, 2012, roughly two weeks prior to the Eaton decision.

Compl. ¶ 16 & Ex. 8.  Accordingly, Eaton does not apply to this case, and Deutsche Bank was

legally permitted to foreclose even if it did not hold the note.

### 2.    *Securitization Of The Note*

Orellana states that he was not in "default."  See Compl. ¶¶ 53-61, 67, 83(b).  He

contends that the securitization of the note rendered it "unsecured" and made it "impossible" to

satisfy the mortgage.  Id. at ¶¶ 54, 55, 83(b).[10]  Because the note's securitization was not

disclosed to him, Orellana maintains, the note and mortgage were not "legally binding

contracts."  Id. at ¶ 67.

As Eaton made clear, Deutsche Bank was entitled to foreclose even without proof that it

held the note.  Eaton, 462 Mass. at 588-89.  Further, securitization by itself does not render a

foreclosure invalid.  See U.S. Nat'l Bank Ass'n v. Ibanez, 458 Mass. 637, 651 (2011) (Cordy, J.,

concurring) ("The type of sophisticated transactions leading up to the accumulation of the notes

---

[10] He also argues that he was an implied third-party beneficiary of "federal bailout monies," the purpose of which was to help "borrowers avoid foreclosure," and that he was entitled to credit portions of such funds against his mortgage arrears.  See Compl. ¶¶ 58-61.  To the extent he argues that he was entitled to funds disbursed pursuant to federal statute, his allegations are conclusory and unsupported by any legal authority.

and mortgages in question in these cases and their securitization … are not barred nor even burdened by the requirements of Massachusetts law.").  Orellana does not allege that he made unsuccessful attempts to pay down his loan, and fails to cite to any authority in support of his legal theories.  Accordingly, the securitization of Orellana's note, by itself, does not support a claim for wrongful foreclosure.

> ### 3.    *Validity Of Assignments*

Orellana challenges the validity of the mortgage assignments.  Specifically, he alleges that the assignments were invalid because: (1) the assignments violated the Trust's MSA; (2) the assigning entities did not hold the note at the time of assignment; (3) the assignments were executed by signatories without legal authority to effectuate the assignments; and (4) MERS lacked authority to assign the mortgage.  Compl. ¶¶ 22-24, 31, 34-39.  Defendants argue that Orellana lacks standing to contest the validity of the assignments.  Def. Mem. at 13-14.[11] Defendants further contend that Orellana fails to demonstrate that the assignments were invalid. Id.

> #### a.    Standing

The First Circuit has determined that a non-party has standing to raise certain challenges to the assignment of his mortgage.  Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 289 (1st Cir. 2013).  A mortgagor has standing to challenge the validity of an assignment to the extent it affects an entity's ability to foreclose.  See id. at 291.  A mortgagor does not, however, have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.  Id. (citations omitted). Consistent with this distinction, courts have held that a plaintiff lacks standing to challenge an

---

[11] "Def. Mem. _" refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss.  Docket No. 13.

assignment to a trust that occurred after its "closing date." See, e.g., Jepson v. HSBC Bank USA, Nat. Ass'n, No. 12-12179-LTS, 2013 WL 639184, at *5 (D. Mass. Feb. 20, 2013), appeal docketed, No. 13-1364 (1st Cir. Apr. 5, 2013) (dismissing claims based on assignment to a trust made close to four years after the closing date of the trust).

Here, Orellana seeks to challenge two of the assignments, the 2009 and 2011 assignments, on the basis that they occurred after the Trust's "cutoff date," in violation of its MSA. Compl. ¶¶ 22, 25. Specifically, he alleges that the Trust's cutoff date was June 30, 2006. Id. at ¶¶ 19, 22.[12] According to Orellana, because both assignments took place after the cutoff date, they violate the MSA and are unenforceable. Pl. Opp. at 5-9. This argument is precisely the sort of challenge that Orellana lacks standing to bring.[13] Accordingly, Orellana's challenges with respect to the MSA must fail.

---

[12] Orellana's complaint alleges two different cutoff dates: June 1, 2006 and June 30, 2006. Id. It appears that June 30, 2006 is the operative date. The MSA defines "Closing Date" as June 30, 2006 and requires that "On or prior to the Closing Date, the Depositor shall deliver to the Custodians Assignments of Mortgages (except in the case of MERS loans), in blank, for each applicable Mortgage Loan." Pl. Opp., Ex. A at 22, 47. In his opposition, Orellana focuses on Defendants' non-compliance with the MSA's June 30, 2006 "Closing Date." Pl. Opp. at 9.

[13] At oral argument, Orellana contended that he had standing to challenge the post-cutoff date assignments because New York law, which governs the MSA, considers such assignments void. Pl. Opp., Ex. A at 113. He referred the Court to a New York trial court decision, Wells Fargo Bank, N.A. v. Erobobo, No. 31648/2009, 2013 WL 1831799 (N.Y. Sup. Ct. April 29, 2013). The Erobobo court interpreted N.Y. Est. Powers & Trusts Law § 7–2.4 and held that the violation of terms contained in a trust agreement regulating the timing of asset transfers and the identity of the trust "Depositor" would void the transfer of an asset into a trust. 2013 WL 1831799 at *8-9. At least one session of this Court has squarely dismissed this argument. See Koufos v. U.S. Bank, No. 12-CV-10743-DJC, 2013 WL 1189502, at *13 n. 2 (D. Mass. July 1, 2013). The Koufos court cited cases indicating that New York does not apply section 7-2.4 literally and that assignments made to a trust after its closing date are merely voidable. See id. This Court finds the reasoning in Koufos persuasive and declines to find that Orellana has standing on the basis of the Erobobo decision.

Orellana's remaining allegations are different.  Unlike the MSA allegation, these arguments challenge the purported assignors' authority to execute valid assignments and call into question the legal sufficiency of the assignments themselves.  Compl. ¶¶ 23-24, 31, 34-39.  This Court finds that Orellana has standing to pursue these allegations to the extent they contest Deutsche Bank's legal authority to foreclose.

> b.  Propriety Of Assignment Without Note

Orellana contends that all three assignments are ineffectual because none of the assigning entities held the note at the time of its assignment.  Compl. ¶ 34.

"In Massachusetts, the note and the mortgage need not be held by the same entity." Culhane, 708 F.3d at 292.  Indeed, up until the time of foreclosure, the mortgagee need not "possess any scintilla of a beneficial interest in order to hold the mortgage."  Id. at 293 & n. 7. When "the mortgage and the note are held by separate entities, an equitable trust is implied by law.  Id. at 292 (citing Eaton, 969 N.E.2d at 1125 & n. 10).  "The mortgagee has a fiduciary duty as trustee to act on behalf of the note owner, but retains title to the mortgage and the right to assign the mortgage consistent with that duty."  In re Marron, 455 B.R. 1, 6 (Bankr. D. Mass. 2011).  Absent a provision in the mortgage instrument restricting transfer, a mortgagee may assign its mortgage to another party.  Culhane, 708 F.3d at 292.  Accordingly, even if the assignors did not hold the note when they executed the assignments at issue, the assignments would not be void solely on that basis.

> c.  M.G.L. ch. 183 § 54B

Orellana contends that the assignments are defective because they are signed by individuals without the requisite authority to do so.  See Compl. ¶¶ 36, 37, 39.  Specifically, Orellana contends that the assignments bear the signatures of persons "without personal

knowledge" of the information contained therein, by "known" "robo-signors," and, in the case of the 2008 assignment, by "employees" that MERS did not have.  Id.

Mortgage assignments are governed by M.G.L. ch. 183, § 54B.  Section 54B requires that the assignment be executed before a notary public, "by a person purporting to hold a position such as vice president, secretary or assistant secretary of the entity that holds record title of the mortgage."  M.G.L. ch. 183, § 54B; Culhane, 708 F.3d at 294.  Even if a signatory lacks authority, an assignment may still be binding under Massachusetts law if the signatory purported to be an officer of the entity holding title to the mortgage and the assignment was executed before a notary public.  See Culhane, 708 F.3d at 294; Rosa v. Mortgage Elec. Sys., Inc., 821 F. Supp. 2d 423, 430 (D. Mass. 2011); Kiah v. Aurora Loan Servs., LLC, No. 10-40161-FDS, 2011 WL 841282, at * 7 (D. Mass. Mar. 4, 2011).  If one of the signatories was a "robo-signor," the assignment is not void on that basis where it is otherwise compliant with Section 54B.  See Butler v. Deutsche Bank Trust Co. Ams., No. 12-10337-DPW, 2012 WL 3518560, at * 9 (D. Mass. Aug. 14, 2012), appeal docketed, No. 12-2108 (1st Cir. Sept. 13, 2012).

Here, all three assignments were executed before a notary public and by individuals purporting to hold the office of vice president and/or assistant secretary for the assigning entities.  Compl. ¶¶ 11-13.  All three assignments, therefore, comply with Section 54B and are binding on the assignors.  Because the assignments are compliant with Section 54B, the allegation that one of the purported signatories was on a well-known list of robo-signors does not void the assignments.

d.       MERS' Authority To Assign

Orellana argues that the 2008 assignment is defective because MERS was merely a nominee for ABC and, therefore, could not act "autonomously" in executing the 2008 assignment.   Pl. Opp. at 11; Pl. Sur-Rep. at 2-3.[14]

The mortgage denominated MERS as mortgagee acting "solely as nominee for [ABC] and [ABC]'s successors and assigns."  Compl., Ex. 2.  Under Massachusetts law, a nominee in such a situation holds a bare legal interest and the note holder enjoys the beneficial interest. Culhane, 708 F.3d at 293.  As such, "even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on ... behalf of the beneficial owner."  In re Marron, 485 B.R. at 489.  When named as mortgagee, MERS had "the authority twice over to assign the mortgage."  Culhane, 708 F.3d at 293.[15]  Here, MERS was authorized to assign Orellana's mortgage in keeping with its role as "nominee" and the terms of the mortgage contract to which Orellana expressly agreed.

Orellana suggests that MERS lacked authority as nominee for ABC because ABC filed for bankruptcy on August 7, 2007.  Pl. Sur-Rep. at 3.  ABC's bankruptcy did not terminate MERS' nominee relationship with a successor purchaser or assignee of the note or affect MERS' status as mortgagee.  Kiah, 2011 WL 841282 at *4; In re Marron, 455 B.R. at 7.  As mortgagee,

---

[14] "Pl. Sur-Rep. _" refers to Plaintiff's Sur-Reply to Defendants' Motion to Dismiss the Complaint.  Docket No. 28.

[15] In his notice of supplemental authorities, Orellana refers the Court to a Massachusetts Superior Court decision, Farmer v. Fed. Nat. Mortgage Ass'n, No. 2012-3736B, 2013 WL 1976240 (Mass. Super. May 9, 2013).  Docket No. 36.  The Farmer court held that "nominee" in this context means that MERS can only act in its nominee capacity when it acts as the agent of the note holder.  2013 WL 1976240 at *9.  Thus, "[a]bsent any showing of agency or direction to MERS by [the note holder], the purported assignment by MERS to [the assignee] is void."  Id. The Farmer court, however, acknowledged that its conclusion ran contrary to Culhane.  Id. at n. 18.

MERS continued to hold the mortgage in trust "for whomever happened to own the Note." In re Marron, 455 B.R. at 7. Because the assignment complied with Section 54B and ABC's bankruptcy did not affect MERS' nominee relationship or its status as mortgagee, Orellana's argument fails.

Accordingly, this Court finds that Orellana has failed to state a claim for wrongful foreclosure on this basis.[16]

### 4.    *Chain Of Title*

In his opposing brief, Orellana argues that his wrongful foreclosure claim is "foundationally based upon the Defendants' failure to provide any evidentiary indicia relative to authenticate that there are executed writings evidencing the entirety of the chain of title" from ABC/MERS to Deutsche Bank. Pl. Opp. at 4. As an initial matter, this allegation does not appear at all in Orellana's complaint and the Court may recommend its dismissal on this basis alone. In any event, this argument is both legally and factually incorrect.

First, Defendants are under no obligation to offer such evidence. "Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property," and Orellana "may not circumvent state law and impose such a requirement by initiating judicial proceedings on [his] own." Jepson, 2013 WL 639184 at * 5 (internal citations omitted). Unlike the purported mortgagee in Ibanez, "where the bank itself instituted an action

---

[16] Orellana's complaint also alleges that the 2011 assignment contains "significant changes from the [2009] Assignment it purports to 'confirm'…" Compl. ¶ 38. He argues that a confirmatory assignment is ineffective where it seeks to confirm a prior but ineffective assignment. Pl. Opp. at 16 n. 23 (citing Ibanez, 458 Mass. at 654). However, a defect in assignment could be resolved by the recording of a "confirmatory assignment," "[w]here an earlier assignment is not in recordable form or bears some defect…" Ibanez, 458 Mass. at 654. In any event, because the Court finds the 2009 assignment to be effective, this argument is not persuasive.

seeking to clear title after foreclosing and, thus, 'bore the burden of establishing their entitlement to the relief sought,' the mortgagees here are the defendants and bear no such burden." Id. (quoting Ibanez, 458 Mass. at 645).

Orellana relies on Ibanez for the proposition that Defendants were required to provide him with a full chain of custody that included the "intermediary" holders of the note. See Pl. Opp. at 2, 6, 9-12; Pl. Sur-Rep. at 7-8. Such reliance is misplaced. The Ibanez court explained that a foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. Ibanez, 458 Mass. at 651. The "key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale." Id. Here, the chain of assignments shows that Deutsche Bank was the mortgage holder as of the June 4, 2012 notice of sale. Nothing more is required.

In addition, the exhibits appended to Orellana's complaint establish a sufficient chain of title. The mortgage names MERS as mortgagee and grants MERS and its "successors and assigns" the power of sale. Compl., Ex. 2. MERS assigned the mortgage to AHMSI which, in turn, assigned it to Deutsche Bank. Compl., Exs. 3, 4, 5.

Accordingly, this Court finds that Orellana has failed to state a claim for Orellana's wrongful foreclosure on this basis.

### 5.   *Notice Of Default*

Orellana alleges that the notice of default was deficient under M.G.L. ch. 244, § 35A. Specifically, he argues that he did not "receive" or "see" the original notice of default. Compl. ¶¶ 15, 52, 83(a), 91. He further states that the version he received in response to his DVL was "so severely redacted that no reasonable person could claim that it is notice of anything." Id. at ¶ 62. He also alleges that the notice of default was insufficient because it did "not name the

creditor to whom the debt is allegedly owed."  Id. at ¶ 83(a).  Defendants argue that Section 35A

is preempted by the federal Homeowners Loan Act, 12 U.S.C. § 1461 ("HOLA").  Def. Mem. at

15-16.  Alternatively, they argue that the notice of default was satisfactory under Section 35A.

Id. at 17-18.

> a.   Preemption

The doctrine of federal preemption is rooted in the Supremacy Clause, which provides

that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in

every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the

Contrary notwithstanding."  U.S. Const. art. VI, cl. 2; see also Sovereign Bank v. Sturgis, 863 F.

Supp. 2d 75, 91 (D. Mass. 2012).  Congress's intent to preempt state law pursuant to the

Supremacy Clause "will be inferred where the scheme of federal regulation is so pervasive as to

make reasonable the inference that Congress left no room for the States to supplement it."

Sovereign Bank, 863 F. Supp. 2d at 91 (citations omitted).  The Supreme Court has "held

repeatedly that state laws can be pre-empted by federal regulations as well as by federal

statutes."  Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707,

713 (1985).

Defendants contend that HOLA and/or its regulations preempt Section 35A.  Def. Mem.

at 15-16.  Defendants rely chiefly on Sovereign Bank.  Sovereign Bank, however, is not

precisely on point.  In that case, the financial institution was a federal savings association

governed by HOLA.  863 F. Supp. 2d at 87, 91.  Here, Deutsche Bank is a national bank that is

not subject to HOLA.  See Ross v. Deutsche Bank Nat. Trust Co., No. 12-10586-WGY, 2013

WL 1225621, at * 6 (D. Mass. Mar. 27, 2013).  Therefore, HOLA does not preempt Section 35A

as it applies to Deutsche Bank.

At oral argument, Defendants referred the Court to <u>Sloane v. JPMorgan Chase Bank, N.A.</u>, No. 12-11355-GAO, 2012 WL 7806163 (D. Mass. Mar. 27, 2012).  The <u>Sloane</u> court analyzed whether an Office of the Comptroller of the Currency ("OCC") regulation, 12 C.F.R. § 34.4(a)(4), preempted Section 35A.  <u>Sloane</u>, 2012 WL 7806163 at * 1.  As a national bank, Deutsche Bank is subject to regulation by the OCC as authorized by the National Bank Act, 12 U.S.C. § 1 <u>et seq.</u> ("NBA").  <u>See id.; Ross</u>, 2013 WL 1225621 at * 6 n. 2.  The NBA does not preempt all state consumer protection laws as banks are "subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter and purpose of the NBA."  <u>Watters v. Wachovia Bank, N.A.</u>, 550 U.S. 1, 11 (2007).

In <u>Sloane</u>, the court found that 12 C.F.R. § 34.4(a)(4) preempted Section 35A.   Section 34.4(a)(4) provides in pertinent part:

> A national bank may make real estate loans . . . without regard to state law limitations concerning . . . [t]he terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan.

12 C.F.R. § 34.4(a)(4).  Judge O'Toole found that Section 35A limits "the circumstances under which a loan may be called due" and regulates the "term to maturity of the loan" by imposing requirements applicable to acceleration of mortgage loans.  <u>Sloane</u>, 2012 WL 7806163 at * 1 (citing M.G.L. ch. 244, § 35A).   Accordingly, the Court found that the OCC regulation preempted Section 35A in that case.

However, in <u>Ross</u>, another session of this Court determined that the same NBA regulation did not preempt Section 35A.  Judge Young focused on whether Deutsche Bank fell within the terms of the regulation.  Specifically, he analyzed whether Deutsche Bank had made or purchased a real estate loan within the meaning of 12 C.F.R. § 34.4(a)(4), as well as 12 U.S.C.

§ 371.  Relying on a 2005 OCC Interpretive Letter, Judge Young concluded that Deutsche Bank in that case "neither originated the loan, funded the loan at inception, nor purchase[d] the loan[s] as part of any real estate lending program comprehended by the regulation."  <u>Ross</u>, 2013 WL 1225621 at * 7 (internal quotation marks omitted).  Accordingly, he determined that the OCC regulation did not preempt the application of Section 35A in that case.  <u>Id</u>.

As these cases demonstrate, the law is currently evolving with regards to the interplay between Section 35A and preemption.  Its application may very well depend on a fact-specific analysis of the role of the defendant.  Deutsche Bank would have to show that it falls within the ambit of 12 C.F.R. § 34.4 in this case.  However, this Court need not attempt to answer definitely this question because Orellana's contentions that the notice of default is defective are incorrect.

b.      Section 35A

Orellana alleges a Section 35A violation because he never "received said 'Notice of Default' until the response to his letter was delivered, even though Massachusetts law requires that a Notice of Default be provided and delivered to the borrower prior to initiating any foreclosure proceedings."  Compl. ¶ 52.  The notice of default is dated December 5, 2008.  Def. Ex. B.  Section 35A was amended in 2010.  Accordingly, the pre-2010 version of Section 35A applies to the notice of default.  Prior to the 2010 amendments, Section 35A stated that the notice of default "shall be deemed to be delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder."  <u>See</u> Def. Ex. E. at 7.  Orellana does not dispute that the notice of default was mailed to his address. Accordingly, Orellana's argument that he did not see or receive the notice of default are not persuasive in light of the presumption that the notice was delivered.

Orellana further argues that the notice of default was insufficient because it did "not name the creditor to whom the debt is allegedly owed." Id. at ¶ 83(a).  Section 35A requires, inter alia, that the notice of default contain "the name and address of the mortgagee, or anyone holding thereunder…" and the "name of any current and former mortgage broker or mortgage loan originator…"  M.G.L. ch. 244, § 35A(h)(4)-(5).  Although Section 35A does not define "mortgagee," a regulation promulgated pursuant to the statute includes "mortgage servicers" as mortgagees. 209 C.M.R. 56.02; see also Foregger v. Residential Credit Solutions, Inc., No. 12-11914-FDS, 2013 WL 3208596, at * 13 (D. Mass. June 21, 2013).

Here, the notice of default listed ABC as the mortgage loan originator and directed Orellana to make payments to AHSMI.  Def. Ex. B ¶¶ 3, 6.  Orellana acknowledges that AHSMI was the mortgage servicer at the time of the December 2008 notice.  Compl. ¶ 10.  As such, the December 2008 notice of default complied with Section 35A.[17]

Finally, Orellana makes general allegations that the notice of default was deficient because it misrepresented the true identity of the mortgagee as a result of the allegedly ineffective assignments described above.  Because this Court finds these arguments unpersuasive for all of the reasons discussed earlier, it likewise finds the arguments unpersuasive with respect to the sufficiency of the notice of default.

Accordingly, this Court finds that Orellana has failed to state a claim for wrongful foreclosure on the basis of the notice of default and recommends that Count II be dismissed.

---

[17]  Orellana alleges that he received a redacted version of the notice of default.  The identity of the mortgagee and the mortgage servicer, however, are not redacted in the version supplied by Orellana.  Compl., Ex. 7.

B.      Fraud

In Count I of his complaint, Orellana charges Defendants with fraud.  Compl. ¶ 79.
Defendants move to dismiss this claim on the grounds that Orellana does not satisfy Fed. R. Civ.
P. 9(b)'s heightened pleading standard and does not plead either a material representation on the
part of Defendants or any detrimental reliance thereon by Orellana.  Def. Mem. at 18-21.

"To establish a claim of fraud under Massachusetts law, a plaintiff must prove that the
defendant made a false representation of a material fact with knowledge of its falsity for the
purpose of inducing the plaintiff to act thereon, and that plaintiff reasonably relied upon the
representation as true and acted upon it to his damage." Taylor v. Am. Chemistry Council, 576
F.3d 16, 31 (1st Cir. 2009) (citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure
requires that the plaintiff plead fraud with particularity. Fed. R. Civ. P. 9(b); see Haydock v.
Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud . . . averments to
conditions of mind, or referrals to plans or schemes are too conclusional to satisfy the
particularity requirement, no matter how many times such accusations are repeated.") (citing
cases).  The heightened pleading standard of Rule 9(b) is satisfied by an averment of "the who,
what, where, and when of the allegedly false or fraudulent representation." Alternative Sys.
Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

Orellana avers that Defendants concealed the "true nature" of the underlying transaction,
i.e., a securities agreement, where he thought it was only a "plain vanilla mortgage" transaction.
Compl. ¶¶ 42-43, 50.  According to Orellana, Defendants concealed the nature of the transaction
to get him to fund an undisclosed security transaction.  Id. at ¶ 75.  Despite such allegations,
Orellana pleads no facts identifying any specific misrepresentation.  Indeed, the note itself

explained that the note or a partial interest in the note (together with the mortgage) could be sold one or more times without notice to Orellana.  Compl., Ex. 1.

Orellana further alleges that Defendants fabricated and/or forged the notice of default and the mortgage assignments.  Compl. ¶¶ 51, 64.  To the extent that these allegations merely repeat the arguments pertaining to robo-signing and authority to sign under Section 54B, such allegations must fail here as well.  To the extent Orellana contends that any documents were forged in violation of M.G.L. ch. 267, <u>see</u> Compl. ¶¶ 40, 51, the complaint does nothing more than quote the language of the statute and offer bare legal conclusions as to Defendants' purported violations.  Orellana does not identify who forged which document or when such forgeries occurred.

For all these reasons, this Court finds that Orellana fails to state a claim for fraud and recommends that Count I of his complaint should be dismissed.

C.    <u>Civil Conspiracy</u>

In Count III, Orellana charges Defendants with civil conspiracy.  Compl. ¶¶ 90-92.

Specifically, he states that Defendants "agreed and conspired together and profited … by scheduling and conducting a wrongful foreclosure sale, for the sole purpose of taking [his] property or profiting therefrom."  <u>Id.</u> at ¶ 90.

A civil conspiracy claim is "akin to a theory of common law joint liability in tort." <u>Aetna Cas. Sur. Co. v. P & B Autobody</u>, 43 F.3d 1546, 1564 (1st Cir. 1994).[18]  A plaintiff must allege

---

[18] Massachusetts law recognizes two types of causes of action for civil conspiracy. The first, referred to as "true conspiracy," is a "rare" and "very limited" cause of action. <u>Aetna Cas. Sur. Co.</u>, 43 F.3d at 1563.  In order to state a claim for true conspiracy, the plaintiff must allege and prove that by "mere force of numbers acting in unison," the defendants exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." <u>Fleming v. Dane</u>, 304 Mass. 46, 50 (1939) (citations omitted). Orellana is not alleging this type of conspiracy. <u>See</u> Pl. Opp. at 19.

"first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement."  Id.  This conspiracy "derives from 'concerted action' whereby liability is imposed on one individual for the tort of another."  The concerted action theory of civil conspiracy requires an underlying tort.  See Taylor, 576 F.3d at 35.

Orellana bases this claim on "Defendants' attempt to defraud" him and allegations that Defendants "conspired to wrongfully foreclose upon his home."  Pl. Opp. at 19.  Because the Court finds that Orellana does not state a claim for either fraud or wrongful foreclosure, Orellana does not demonstrate a "tortious act in furtherance" of any purported agreement.

Accordingly, this Court finds that Count III fails to state a claim and recommends that it should be dismissed.

D.      Quiet Title

In Count IV, Orellana seeks to quiet title on the Property and requests a declaration stating that the Property is vested in him alone.  Compl. ¶ 102.

Under Massachusetts law, a plaintiff cannot maintain a quiet title action unless he has both actual possession of and legal title to the property.  Ayer v. U.S. Bank, N.A., No. 12-10981-NMG, 2012 WL 5361480, at * 2 (D. Mass. Oct. 30, 2012) (citing Daley v. Daley, 300 Mass. 17 (1938)).  A quiet title action is not appropriate for a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud.  Id.  Because Orellana does not allege that he has paid his loan in full, he is unable to maintain a quiet title action.

Accordingly, this Court finds that Count IV fails to state a claim and recommends that it should be dismissed.

E.       Punitive Damages

Orellana contends that Defendants' allegedly unlawful actions warrant punitive damages and he brings a separate count on that basis.  Compl. ¶ 104.  "Punitive damages constitute a part of the element of damages of a legal claim" and "are not a separate legal claim."  In re WellNx Mktg. & Sales Practices Litig., 673 F. Supp. 2d 43, 58 (D. Mass. 2009) (citing Porcaro v. Chen, No. 0402896, 2004 WL 3091558, at * 6 (Mass. Super. Nov. 30, 2004)).

Accordingly, this Court recommends that Orellana's claim for punitive damages as a separate count should be dismissed.

V.       CONCLUSION

For the foregoing reasons, this Court recommends that Defendants' motion be GRANTED and that Orellana's complaint be DISMISSED.

VI.      REVIEW BY A DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge